## STEWART *v.* SOWLES et al.

Though a written contract may be necessary to establish a partnership in the ownership of slaves as between the partners themselves (C. C. 2807), parol evidence will be admissible in favor of a third person charging a partnership interest, and a fraud committed by one of the partners for the benefit of his associates.

A purchaser who sues to rescind the sale of a slave on the ground of fraud, will not be estopped by the written act of sale made in the name of one party alone, from showing the interest of other parties.

The Code having provided (arts. 3523, 3524) that, where the seller knows of the vice of the thing sold and omits to declare it, an action of redhibition may be commenced at any time, provided a year have not elapsed since the discovery of the vice, and that the discovery is not to be presumed but must be proved by the seller, an allegation by a plaintiff in a redhibitory action instituted on the 30th of March, that the slave ran away from him on the 16th of March of the preceding year, will not relieve the defendant from the necessity of proving the time of the discovery of the vice. The fact that the slave ranaway on the day mentioned in the petition, does not necessarily involve the knowledge of the pre-existence of the vice, which forms the basis of the action. C. C. 2505.

In an action against a vendor to rescind the sale of a slave on account of the vice of running away, and for damages, though it be proved that defendant knew of the redhibitory vice and omitted to declare it, plaintiff can only recover such damages as would, at the time of defendants' refusal to restore the price, have indemnified him, that is, the price with interest, the expense of advertizing the elopement and the costs of the act of sale ; he cannot recover fees paid to counsel for instituting the redhibitory action. The expenditure for fees of counsel was the result of the refusal to restore the price. It was not such an immediate and direct consequence of the breach of the contract, as is contemplated by arts. 2525, 1928 of the Code.

APPEAL from the Fifth District Court of New Orleans, *Buchanan*, J. *Bradford*, for the plaintiff. *Preston*, for the appellants. The judgment of the court was pronounced by

SLIDELL, J. This suit was instituted to recover from the defendants the price of a slave, purchased under full warranties, by the plaintiff from *Glasgow*, in January, 1845, and who ran away on the 16th March, 1845. The petition charges that the defendants combined with *Glasgow*, for the purpose of deceiving and defrauding the purahaser; that they knew the slave was an habitual runaway, and deceived the plaintiff by false representations as to his place of birth and former ownership ; that the sale, though made in the name of *Glasgow*, was made by the procurement, and for the account of the defendants ; that they are bound by the representations and warranties contained in the act, and responsible for the price and damages. The district judge was of opinion that the allegations of the plaintiff were sustained by the evidence, and in that opinion we concur. Our attention will, therefore, only be addressed to the questions of law presented in the argument of the defendants' counsel.

The defendants objected to parol evidence to prove the existence of a partnership interest in *Sowles* and *Hite* with *Glasgow*, upon the ground that a partnership in slaves must be constituted in writing, under the 2807th article of the Code. However necessary a written contract might be to establish such a partnership as to the partners *inter se*, we are of opinion that parol evidence was admissible in favor of a third person, charging a partnership interest and a fraud committed by one of the partners, by the procurement, and for the benefit, of his associates; and for the same reason we are of opinion that, the plaintiff was not estopped from showing the interest of *Sowles* and *Hite*, by the deed of sale in which she contracted with *Glasgow* alone, the party put forward by the defendants for the accomplishment of the fraudulent purpose.

It is contended that the action is barred by prescription. The slave ran away on the 16th March, 1845. On the 23d April, 1845, an action was brought against *Glasgow*, upon which judgment was rendered. During the prosecution of that action the plaintiff discovered the connection of the present defendants with the matter, and brought the present suit, on the 30 March, 1846. Citation was served on the 1st April, 1846. In ordinary cases the redhibitory action must be brought within a year from the date of sale. C. C. 2512. The same article, however, declares that, this limitation does not apply where the seller had knowledge of the vice, and neglected to declare it to the purchaser. Article 2523 defines the extent of the liability of the seller, who knows the vice of the thing he sells, and omits to declare it; and the succeeding article declares that: "In this case the action for redhibition may be commenced at any time, provided a year has not elapsed since the discovery of the vice. This discovery is not to be presumed; it must be proved by the seller." The burden being thus thrown upon the seller to prove the discovery, the defendants contend that the proof was furnished by the plaintiff himself, by the allegation of her petition. The allegation was that, the slave ranaway "on or about the 16th March, 1845." But the knowledge on the 16th March, 1845, of the fact that the slave ranaway on that day, does not necessarily involve the knowledge of the preexistence of the vice which is the basis of this action. To maintain the action of redhibition. the vice of which the purchaser complains must have existed before the sale. One of the vices which authorize the action in the case of slaves is, "the habit of running away." That a slave runs away to-day is not proof that he was formerly in the habit of running away. Reason would reject such a conclusion as inconsequent. The language of the Code is also opposed to it. Article 2505, indicates what shall be deemed sufficient evidence that a slave has the habit of running away: "The slave shall be considered as being in the habit of running away, when he shall have absented himself from his masters' house twice for several days, or once for more than a month." If the plaintiff in a redhibitory action should prove merely that, the slave he purchased ranaway once from his former master and was absent less than a month, he would not recover. A *fortiori* then, it would be improper to hold that the elopement of the slave in question from his mistress for the first time, at least until his absence had continued for a month, should affect her with the presumed knowledge of the pre-existence of the habit of running away. But, as we have already seen, the terms of the law are stringent; the injured vendee is carefully protected. The discovery is not to be presumed; it must be proved by the seller. He has failed to establish the discovery of the vice a year before suit was brought, and the plea of prescription was, therefore, properly disregarded.

STEWART
v.
SOWLES.

The judgment of the court below included as damages a sum of $100, fees paid by the plaintiff to her counsel in the present case and in the suit against *Glasgow.* It is said in support of the judgment that, article 2523 declares that the seller who knows the vice of the thing sold and omits to declare it, is answerable to the buyer in damages, besides the restitution of the price and repayment of the expenses. And the french text of this article is referred to as enunciating in very strong terms the extent of responsibibity, " est tenu, outre la restitution du prix et le remboursement des frais, de *tous* dammages et interests euvers l'acheteur."

It cannot be supposed that the mere omission of the seller to declare a vice known to him, was intended by the Code to impose a more onerous responsibility than a fraudulent declaration made by the seller that the thing sold possesses some quality which he knows it does not possess. But in the latter case ar.icle 2525, refers us to the rules laid down under the title of " conventional obligations." Recurring to that portion of the Code we find it declared that : " when the inexecution of the contract has proceeded from fraud or bad faith, the debtor shall not only be liable to such damages as were or might have been foreseen at the time of making the contract, but also to such as are the immediate and direct consequence of the breach of that contract ; but, even where there is fraud, the damages cannot exceed this. C. C. 1928.

Although the law intends to punish the fraudulent vendor, it has nevertheless fixed limits to the punishment, and has been unwilling to confide to courts or juries an uncontrolled discretion, which might be exercised in a spirit of vengeance, and run into oppression and injustice. Remote damages are, therefore, excluded, and the indemnity must be restricted to such as are by reasonable intendment the immediate and direct consequence of the fraud.

It is true the counsel fees would not have been expended by the plaintiff, if this purchase had not been made ; but the proximate cause of their expenditure was the refusal of the defendants to restore the price. Until the refusal no counsel fees had been expended, nor were necessary. The plaintiff, upon his own showing, would have been indemnified up to the institution by suit against *Glasgow,* by the restoration of the price without interest, the expenses incurred in advertizing the elopement, and the costs of the notarial act of sale.

It is, therefore, decreed that the judgment of the court below be reduced from the sum of $762 85, to the sum of $664 85, and that so reduced it be affirmed ; the plaintiff paying the costs of this appeal.